

UNSEALED PER ARREST 7/12/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | Criminal No. 12-009 |
| v. | § | |
| | § | UNDER SEAL |
| KENNY MSIAKII, | § | |
| | § | |
| Defendant. | § | |

United States Courts
Southern District of Texas
FILED

JAN 10 2012

David J. Bradley, Clerk of Court

# INDICTMENT

The Grand Jury charges:

## General Allegations

At all times material to this Indictment, unless otherwise specified:

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "healthcare benefit program" as defined by Title 18, United States Code, Section 24(b).

2. Medicare was subdivided into multiple Parts. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.

3. Orthotic devices were a type of DME that included rigid and semi-rigid devices such as foot braces, ankle braces, knee braces, back braces, shoulder braces, elbow braces, wrist braces and hand braces (collectively "orthotics").

4. Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries." Each beneficiary was given a Medicare identification number.

5. DME companies, physicians and other healthcare providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A healthcare provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

6. Medicare paid DME companies and other healthcare providers for services rendered to beneficiaries. Medicare would generally pay for DME and related medications only if they were prescribed by the beneficiary's physician and were medically necessary to the treatment of the beneficiary's illness or injury.

7. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

8. CMS contracted with Durable Medical Equipment Regional Carriers ("DMERCs") to provide Medicare benefits and process claims for reimbursement. The DMERC that processed and paid Medicare DME claims in Texas was CIGNA Government Services ("CIGNA").

9. To bill Medicare for services rendered, a provider submitted a claim form (Form 1500) to CIGNA. When a Form 1500 was submitted, usually in electronic form, the provider certified that: (1) the contents of the form were true, correct and complete; (2) the form was prepared in compliance with the laws and regulations governing Medicare; and (3) the contents of the claim were medically necessary.

2

10. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment or medicine provided to the beneficiary, the date the equipment or medicine was provided, the cost of the equipment or medicine and the name and unique physician identification number of the physician who prescribed or ordered the equipment or medicine.

11. Joy Supply and General Services ("Joy Supply") was a Louisiana business entity purportedly doing business at 610 Marshall Street, Suite 501, Shreveport, Louisiana. Among other things, Joy Supply billed Medicare for orthotics, heat pads, power wheelchairs and other DME that was not medically necessary and, in some cases, was never provided to the Medicare beneficiaries.

12. Defendant **KENNY MSIAKII**, a resident of Harris County, Texas, was the owner of Joy Supply.

## COUNTS 1-8
### Health Care Fraud
### (Violation of 18 U.S.C. § § 1347 and 2)

13. Paragraphs 1 through 12 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

14. From in or around November 2007, and continuing through in or around September 2009, in the Houston Division of the Southern District of Texas, and elsewhere, defendant,

**KENNY MSIAKII,**

aiding and abetting others known and unknown to the Grand Jury, in connection with the delivery of and payment for healthcare benefits, items and services, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a healthcare benefit program

3

affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of Medicare.

### Purpose of the Scheme and Artifice

15. It was the purpose of the scheme and artifice for the defendant to unlawfully enrich himself by (a) submitting false and fraudulent claims to Medicare, (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of proceeds from the fraud, and (c) diverting proceeds of the fraud for the personal use and benefit of the defendant.

### Manner and Means of the Scheme and Artifice

16. Defendant **KENNY MSIAKII** would maintain a valid Medicare provider number for Joy Supply to submit claims to Medicare for DME that was not medically necessary and in some cases, never provided to Medicare beneficiaries.

17. Defendant **KENNY MSIAKII** would control the day-to-day operations of Joy Supply.

18. Defendant **KENNY MSIAKII** would submit approximately $467,240.74 in claims to Medicare for DME purportedly prescribed by Dr. Stephen Brown of Houston, Texas although Dr. Brown did not prescribe any of the DME for which defendant **KENNY MSIAKII** billed Medicare.

19. Defendant **KENNY MSIAKII** would submit approximately $6,727,723.72 in claims to Medicare for DME, including orthotics, heat pads, power wheelchairs and power wheelchair accessories, that was not medically necessary and in some cases, never provided.

20. Payments from Medicare were deposited into a Joy Supply bank account of which defendant **KENNY MSIAKII** was the sole account holder.

### Acts in Execution of the Scheme and Artifice

21. In execution of the scheme and artifice, **KENNY MSIAKII** caused the submission of the following claims to Medicare for DME that was not medically necessary and in some cases, never provided:

| Count | Medicare Beneficiary | Approx. Date of Claim | Description of Item Billed | Approx. Amount of Claim |
|---|---|---|---|---|
| 1 | R.F. | 5/23/2008 | Orthotics | $4,362.41 |
| 2 | D.F. | 8/6/2008 | Orthotics and Heat Lamp | $3,115.43 |
| 3 | D.F. | 8/6/2008 | Power Wheelchair and Accessories | $5,638.81 |
| 4 | T.C. | 9/4/2008 | Orthotics and Heat Lamp | $3,199.18 |
| 5 | T.C. | 9/4/2008 | Power Wheelchair and Accessories | $6,381.74 |
| 6 | R.A. | 9/16/2008 | Orthotics and Heat Lamp | $4,095.87 |
| 7 | C.J. | 10/27/2008 | Orthotics and Heat Pad | $4,276.69 |
| 8 | C.J. | 10/27/2008 | Power Wheelchair and Accessories | $5,326.88 |

In violation of Title 18, United States Code, Sections 1347 and 2.

### NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(7))

22. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to the defendant **KENNY MSIAKII**, that, in the event of conviction for any of the violations charged in Counts 1 through 8 of the Indictment, the United States intends

to forfeit all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of any such offense, including, but not limited to, a money judgment in the amount of at least $3,611,536.37 in United States currency.

23. In the event that the property subject to forfeiture as a result of any act or omission of the defendant:

    a. cannot be located upon exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

ORIGINAL SIGNATURE ON FILE

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

LAURA M.K. CORDOVA
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE